UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CLARENCE BANKS**, | ) | Case No.  5:09 CV 1569 |
| | ) | |
| Petitioner, | ) | Judge Jack Zouhary |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| **MAGGIE BEIGHTLER, WARDEN** | ) | (Resolving Docket #1) |
| | ) | |
| Respondent, | ) | Magistrate Judge James S. Gallas |
| | ) | |

Petitioner Clarence Banks was indicted in the Summit County Court of Common Pleas for

one count of kidnapping, one count of intimidation of a crime victim or witness, two counts of

domestic violence, two counts of failure to comply with the order or signal of police officer, one

count of grand theft, one count of driving under suspension, and three misdemeanor traffic

violations.  (Docket #5, Exhibit 1).  The indictment was later amended to reduce the kidnapping

charge "to the lesser-included offense of robbery." (*Id.*, Exhibit 2).  Mr. Banks entered a plea of

guilty and was convicted. *Id.*  Both parties filed sentencing memoranda; the State sought a term of

15.5 years imprisonment and Mr. Banks objected. (*Id.*, Exhibits 3 and 4).   On April 30, 2008, Mr.

Banks was sentenced to a term of imprisonment of 14 years. (*Id.*, Exhibit 5).

On June 10, 2008, Mr. Banks, still represented by trial counsel, appealed his conviction to

the Ohio Ninth District Court of Appeals.  (*Id.*, Exhibit 6).  On appeal, Mr. Banks argued that: (1)

"the trial court erred and abused its discretion when it imposed a sentence against Clarence Banks

which was grossly disproportionate to his crime and inconsistent with similarly situated offenders";

and (2) "the trial court erred as a matter of law in sentencing Mr. Banks to consecutive sentences

for allied offenses of similar import which were committed with a single animus."  (*Id.*, Exhibit 7).

2

Mr. Banks's conviction and sentence were affirmed by the Ohio Ninth District Court of Appeals

on December 10, 2008. (*Id.*, Exhibit 9).

On March 11, 2009, Mr. Banks, pro se, filed a motion for delayed appeal with the Ohio

Supreme Court. (*Id.*, Exhibit 10).  The Supreme Court denied Mr. Banks's motion on May 11, 2009.

(*Id.*, Exhibit 11).

Mr. Banks, pro se, filed the instant petition on July 9, 2009 (Docket #1), under 28 U.S.C.

§2254, and presents two grounds for relief:

> **Ground for Relief No. 1**: "Conviction obtained by plea of guilty with no understanding of the consequences of the plea by implementing with a grossly excessive and disproportionate sentence inconsistent with similarly situated offenders." (*Id.* at 4).

> **Ground for Relief No. 2**: "Conviction obtained by a violation of the protection against double jeopardy through consecutive sentences for allied offenses of similar import which were committed with a single animus."  *Id.*

Respondent answered opposing the petition (Docket #5) and Mr. Collins filed a traverse.

(Docket #6).

## I.    *FACTUAL BACKGROUND*

The facts that formed the basis of the Mr. Banks's conviction were set forth in *State v. Banks,*

2008 WL 5159002, at ¶¶2-5 ("State Court Decision").

> Paula Nelson and Banks had a child together in 2007, but were never married. On December 10, 2007, Nelson agreed to take Banks to a friend's house so the two could celebrate Banks' birthday. Shortly after arriving there, Banks wanted to leave so he and Nelson could have sex. She refused, but instead agreed to take him to his brother's house. As they were driving there, Banks attempted to remove the car's keys from the ignition. When Nelson resisted his efforts, he bit her hand and punched her face and head. Once the struggle ensued, Nelson pulled the car off the road and removed the keys from the ignition, at which point they were thrown into the backseat. Nelson reported to police that during the parties' struggle to recover the keys, Banks continued to bite her on the face and hand, punched her in the face and

3

ribs, tried to strangle her, and told her he was going to kill her. Nelson ran from the car to the nearest house where she called 911.

Banks found the keys to Nelson's car and when police arrived, he fled the scene. When Nelson told police that Banks was driving away in her car, they began pursuing him. With the passenger door ajar, Banks continued driving from the scene despite being followed by police who had activated their sirens and lights. Banks fled through a residential neighborhood and ran two stop signs before hitting a tree and totaling Nelson's car. Banks sustained a broken arm and a concussion. He was bleeding from his head and mouth when he fell out of the car to the ground and stated to police 'I am going to kill my wife because she doesn't love me anymore.' Banks maintains that he was intoxicated that night and does not recall any of the aforementioned events. Nelson was treated and released for her bite wounds and associated injuries.

On December 27, 2007, Banks was charged with kidnapping in violation of R.C. 2905.01(A)(2)/(3)/(4), a first degree felony; intimidation of a crime victim or witness in violation of R.C. 2921.04(B), a third degree felony; two counts of domestic violence in violation of R.C. 2919.25(A) and (C), a third degree felony and first degree misdemeanor respectively; two counts of failure to comply with the order or signal of police officer in violation of R.C. 2921.331(B), a third and fourth degree felony respectively; grand theft in violation of R.C. 2913.02(A)(1)/(2)/(4), a fourth degree felony; driving under suspension in violation of R.C. 4510.11, a first degree misdemeanor; and three misdemeanor traffic violations (stop sign, failure to control, and speeding in violation of R.C. 4511.12, R.C. 4511.202, and R.C. 4511.21).

On March 12, 2008, the State amended the kidnapping charge to robbery and offered Banks an agreed sentence of five years. Banks plead guilty to robbery and all other charges listed on the original indictment, but rejected the State's sentencing offer. On April 30, 2008, Banks was sentenced to a total of 14 years in prison: five years for robbery, two years for intimidation of a crime victim, four years for domestic violence, and three years for failure to comply with the order or signal of police officer (where the third and fourth degree felonies were merged). Banks received six months for domestic violence menacing to run concurrent with the other domestic violence count. Banks was sentenced to one year for grand theft, which was merged with the robbery count. Banks was sentenced to 180 days for driving under suspension and costs to be paid for the traffic violations. Banks now appeals from his conviction and sentence.

4

**II.**     *LAW AND ANALYSIS*

For purposes of federal collateral review, all claims adjudicated on their merits by state

courts are governed by 28 U.S.C. §2254(d)(1) and (2), which  extends the  permissible range of

federal review of state convictions follows:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim  - - -
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable*
> *application* of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding
> (emphasis supplied).

A district court has very restricted Congressionally-granted powers for review under 28

U.S.C. §2254(d).  See *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000)*; Bell v. Cone*, 535 U.S. 685

(2002). The habeas applicant must show either that the state decision was "contrary  to" or an

"unreasonable application" of Supreme Court precedent.   The phrases "contrary to" and

"unreasonable application" are not the same.   Under the "contrary to" standard of review, the state

court's decision is "contrary to" clearly established federal law when it "confronts a set of facts that

are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at

a result different from [this] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *Williams,*

529 U.S. at 405-06; *Mitchell v. Esparza*, 540 U.S. 12, 15 (2003).  Under those circumstances the

Supreme Court has held that the federal court on habeas review may grant the writ. *Id.*  The phrase

"clearly established Federal law" refers to holdings, as opposed to *dicta,* of the U.S. Supreme Court

5

at the time of the relevant state court decision.  *Lockyer*, 538 U.S. at 71-72; *Williams*, 529 U.S. at 412; *Bell*, 535 U.S. at 698.

Under the "unreasonable application" standard, "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Rompilla v. Beard*, 545 U.S. 374, 380 (2005); *Williams*, 529 U.S. at 413; *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).  This includes both the state court's refusal to extend and/or its unreasonable extension of existing legal principles from Supreme Court precedent to new contexts.  See *Williams*, 529 U.S. at 407.   The unreasonable application of Supreme Court precedent must, however,  be "objectively" unreasonable.  *Id.* at 409; *Wiggins,* 539 U.S. at 520-21.  When the state court has rendered a decision, the federal reviewing court  may not grant the writ in its "independent review of the legal question."  *Lockyer*, 538 U.S. at 75.  When there has been an "unreasonable application" of clearly established federal law, then no deference is due to the state decision and the federal court is free to resolve the claim independently.

Respondent contends that Banks's untimely appeal to the Ohio Supreme Court has resulted in a procedural default barring federal review under *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004), *cert. denied*, 543 U.S. 989 (2004).   Respondent is correct.

 Under the state procedural mechanism, the Ohio Supreme Court has jurisdiction over timely appeals which are exercised within 45 days of entry of the state appellate court's decision.  *See* Ohio S.Ct Prac.R.  II §2(A)(1).  The Ohio Supreme Court may in its discretion take jurisdiction over untimely felony appeals upon motion for leave to file a delayed appeal pursuant to Ohio S.Ct.Prac.R. II §2(A)(4)(a).  However, in those instances where the Ohio Supreme Court chooses not to allow

6

the delayed appeal, the Sixth Circuit  held in *Bonilla v. Hurley,* that the unexplained state court decision denying leave to file an untimely appeal to the Ohio Supreme Court is presumed to enforce any applicable procedural bar. See *Bonilla*, 370 F.3d at 497; *Smith v. State of Ohio Dept. of Rehab and Corr.*, 463 F.3d 426, 431-32 (6ᵗʰ Cir. 2006). Denial of an Ohio S.Ct. Prac. R. II §2(A)(4)(a) motion for leave to file delayed appeal is not a ruling on any claim included with the motion for leave, and has been determined to be  an "adequate and independent" basis for procedural default consistent with *Maupin v. Smith*, which can foreclose federal habeas review.  See *Bonilla*, 370 F.3d at 497; *Smith v. State of Ohio Dept. of Rehab and Corr.*, 463 F.3d 426, 431-32 (6ᵗʰ Cir. 2006).

Moreover, Mr. Banks did not have "cause" to excuse the procedural default.  Mr. Banks contends that he was "not notified by [appellate counsel] that his appeal had been denied, nor had the appellant received confirmation of the denial from the Ninth District Court of Appeals." (Docket #5-1 at 3).  Accordingly, he missed the deadline to file his appeal to the Supreme Court of Ohio. *Id.*

While framed as a failure to receive notice of the judgment, the crux of Mr. Banks's argument is that his procedural default should be excused because of the ineffectiveness of his appellate counsel in failing to provide him timely notice of the Ohio Court of Appeals' judgment. "Constitutionally ineffective assistance of counsel may constitute cause to excuse a procedural default."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir.1999).   Mr. Banks was constitutionally entitled to counsel as notification of the results of an appeal are part of the direct appeal process, a process in which a defendant is entitled to counsel. *Smith v. State of Ohio Dept. Of Rehabilitation and Corrections*, 463 F.3d 426, 433 (6th Cir. 2006).

To overcome procedural default for this reason, however, Mr. Banks must show that trial counsel was ineffective in failing to notify him of the State Court Decision.  *Id.* at 432.  To do so,

he must demonstrate that counsel's performance was deficient and that he was prejudiced. *Id.*, *citing*

*Ballard v. United States*, 400 F.3d 404, 407 (6th Cir. 2005), *citing Strickland v. Washington*, 466 U.S.

668, 687 (1984).   Counsel's failure to notify Mr. Banks of the results of his direct appeal was

deficient.  *See Smith*, 463 F.3d at 435.   However, Mr. Banks cannot demonstrate that he was

prejudiced.

> As held in *Smith, supra*:
>
> When, as here, a defendant alleges that his counsel's ineffective assistance led "to the forfeiture of a proceeding itself" by denying him the opportunity to appeal and thus to the appeal proceeding itself, prejudice is presumed. For this presumption to apply, however, the defendant must demonstrate that counsel's deficient performance 'actually cause[d] the forfeiture of the defendant's appeal. In determining whether the deficient performance of *** counsel caused the forfeiture of [Defendant's] appeal, we apply a modified version of the standard set forth in Flores-Ortega: 'that there is a reasonable probability that, but for counsel's deficient failure to' notify [Defendant] of the Ohio Court of Appeals decision, [Defendant] 'would have timely appealed' to the Ohio Supreme Court. 'Evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination.'
>
> In assessing whether a defendant *** 'would have timely appealed,' by considering whether the defendant 'promptly expressed a desire to appeal,' we apply a rebuttable presumption that if the period of time between when the defendant learned of the decision and when he or she attempted to appeal the decision is greater than the period allotted by state law for the timely filing of an appeal--here, forty-five days--the defendant fails to demonstrate that he or she 'would have timely appealed' the decision but for the counsel's deficient failure to notify the defendant of the decision.

*Smith*, 463 F.3d 426, 435, *quoting Roe v. Flores-Ortega*, 528 U.S. 470 (2000).

Here, Mr. Banks acknowledges that he received notice of the State Court Decision on

January 2, 2009.  (Docket #5-1 at 3).  He filed his motion for delayed appeal on March 11, 2009.

A party may appeal an Ohio appellate court decision within 45 days of the appellate decision.  Ohio

Supreme Court Rule II¶2(A)(1)(a).  Because Mr. Banks did not file his motion for delayed appeal

8

within this time frame, he cannot establish that he would have appealed but for counsel's deficient performance and was, therefore, prejudiced.  *See Smith, supra* at 436.

Moreover, Mr. Banks also cannot overcome the procedural default on his claims on the basis of a fundamental miscarriage of justice because he has not claimed, nor presented any evidence, that he was "actually innocent."  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### III.    CONCLUSION AND RECOMMENDATION

Based on the foregoing, federal review of this petition is foreclosed by both untimeliness and procedural bar from the state courts' application of adequate and independent state procedural rule absent Mr. Banks's demonstration of prejudice to excuse the procedural default or establishing actual innocence. Accordingly petitioner has not demonstrated that he is in custody pursuant to a judgment of the state court which resulted in a decision that was contrary to or involved an unreasonable application of Federal law as determined by the Supreme Court of the United States or was the result of a decision based on an unreasonable interpretation of the facts in light of the evidence in the State court proceeding.  See 28 U.S.C. §2254(d)(1) and (2).  There has been no demonstrated need for an evidentiary hearing.  It is recommended that this application for habeas corpus be denied.

s/James S. Gallas
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).

Dated: July 6, 2010